UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAULETTE LYNN CARR,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. CV 14-09134-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Paulette Lynn Carr ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her application for disability benefits. On appeal, the Court concludes that the ALJ properly considered the medical evidence of record. The Court also concludes that the new evidence submitted by Plaintiff to the Appeals Council does not warrant remand. Therefore, the ALJ's decision is affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits on March 23, 2011, alleging disability beginning February 4, 2011.

Administrative Record ("AR") 23, 145.  After Plaintiff's application was denied, she requested a hearing before an ALJ. AR 23, 88-91. On September 6, 2012, Plaintiff appeared before an ALJ who continued the hearing and ordered a consultative examination to occur after Plaintiff's upcoming surgery. AR 23, 78-84. On April 11, 2013, Plaintiff appeared and testified at a second hearing before the same ALJ. AR 23, 57-77.

On May 9, 2013, the ALJ issued a partially favorable decision finding Plaintiff disabled for a closed period from February 4, 2011 through December 31, 2012 ("the closed period of disability"). AR 23-35. Specifically, the ALJ found that Plaintiff had the severe impairment of status post lumbar surgeries, the result of her lumbar fusions in February 2011 and September 2012. AR 26-27. After finding that Plaintiff's bipolar disorder "has not caused more than a minimal limitation in her ability to perform basic work-related activities," AR 27, the ALJ determined that during the closed period of disability Plaintiff retained the residual functional capacity ("RFC") to lift and carry no weight; to stand and walk up to 2 hours out of an 8-hour day; and to sit up to 6 hours out of an 8-hour day, AR 27-28. Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform her past relevant work nor could she make a successful vocational adjustment to work that existed in significant numbers in the national economy. AR 30-31.

However, the ALJ also found that, as of January 1, 2013, Plaintiff had medically improved. AR 32. The ALJ noted that after December 31, 2012, "the record shows less severe anatomical abnormalities in the lumbar spine area and improvement in [Plaintiff's] physical functioning." Id. Thus, the ALJ found that, beginning on January 1, 2013, Plaintiff had the RFC to lift and carry 10 pounds occasionally; to stand and walk up to 2 hours out of an 8-hour day; and to sit up to 6 hours out of an 8-hour day. AR 32. Based on the VE's testimony, the ALJ found that the demands of Plaintiff's past relevant work

2

still exceeded her RFC, AR 34, but that Plaintiff was not disabled as of January 1, 2013 because there was work available in significant numbers in the national and regional economy that she could perform despite her impairments, AR 34-35.

## II.

## ISSUES PRESENTED

The parties dispute whether: (1) the ALJ properly weighed the medical evidence of record; and (2) remand is warranted for consideration of new evidence regarding Plaintiff's mental impairments. See Joint Stipulation ("JS") at 5-40.

## III.

## DISCUSSION

## A. The ALJ Properly Considered the Medical Evidence of Record

Plaintiff contends that the ALJ failed to properly consider the medical evidence in assessing her RFC for three reasons. JS at 5-14, 26-27. First, Plaintiff contends that the ALJ improperly rejected the opinion of a treating physician assistant. Id. at 6-12, 26. Next, Plaintiff argues that substantial evidence does not support the determination of medical improvement in light of a treating physician's questionnaire, which was submitted to the Appeals Council after the ALJ's decision. Id. at 10, 14, 27. Finally, Plaintiff contends that substantial evidence does not support the ALJ's finding of medical improvement sufficient to overcome the presumption of continuing disability. Id. at 12-14, 26-27.

### 1. The Physician Assistant's Assessment

#### a. Relevant Law

An ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). But physician assistants are ordinarily treated as "other sources" rather than

"acceptable medical sources." <u>See</u> 20 C.F.R. § 404.1513(a), (d) (defining "acceptable medical sources" and "other sources," the latter including physician assistants). An ALJ may discount testimony from "other sources" if the ALJ gives "reasons germane to each witness for doing so." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012).

        b.    Background

On September 5, 2012, physician assistant James Hager completed a Spinal Impairment Questionnaire for Plaintiff. AR 359-65. In the questionnaire, Hager reported that he had seen Plaintiff seven times since July 2011. AR 359. He noted that Plaintiff was suffering from failed back surgery syndrome and assessed her prognosis as "poor." <u>Id.</u> Hager indicated that his examination of Plaintiff revealed limited range of motion for lumbar extension and flexion, tenderness at the coccyx, bilateral lumbar muscle spasms, sensory loss from the L4-L5 levels, and an abnormal gait. AR 359-60.

Hager opined that Plaintiff's symptoms were "periodically" severe enough to interfere with attention and concentration and that she was capable of only low-stress work. AR 363-64. He also opined that Plaintiff could not sit for more than one hour and could not stand and walk for more than two hours in an eight-hour day, AR 362; that Plaintiff could occasionally lift and carry less than 10 pounds and could never carry more than ten pounds, AR 362-63; and that Plaintiff's impairments would produce good days and bad days, and she would likely miss more than three times a month as a result of her impairments and treatment, AR 364.

The ALJ gave Hager's opinion "little probative weight" because it was not supported by the objective medical evidence, which showed improvement in Plaintiff's condition with treatment. AR 33. The ALJ further noted that, "as a physician's assistant, Hager is not considered an acceptable medical source […], which renders his opinion less persuasive." <u>Id.</u>

4

c.    Analysis

Plaintiff first argues that the ALJ erred in not treating the Spinal Impairment Questionnaire completed and signed by Hager as the opinion of an acceptable medical source. JS at 10-11, 26. Specifically, Plaintiff contends that Hager's opinion should have been given the same weight as that of a treating physician because he necessarily worked under a physician's supervision. Id. But the record does not reflect any evidence of a physician's involvement in Hager's treatment of Plaintiff. Indeed, the Spinal Impairment Questionnaire does not indicate that a physician was present during any of Plaintiff's visits with Hager, and he alone signed the questionnaire. AR 359-65. Nevertheless, Plaintiff appears to argue that Hager's opinions can be attributed to a treating physician because California law requires that physician assistants be supervised by physicians. See JS at 10 ("The participation of the assistant does not wash out the color of the physician's oversight, responsibility, and attribution of the opinions expressed"); Cal. Code Regs. Tit. 16, § 1399.545. The Court disagrees.

The California Code of Regulations mandates that a supervising physician be accessible for consultation, at least electronically, during "all times when the physician assistant is caring for patients." See Cal. Code Regs. Tit. 16, § 1399.545(a). Section 1399.545 otherwise requires that the supervising physician delegate tasks only within the physician's specialty or consistent with customary treatment practice; that the physician review evidence of the physician assistant's performance until assured of the latter's competency; that the physician and physician assistant establish written procedures for emergency care; and that they establish written guidelines to ensure that the physician assistant is adequately supervised. See id. § 1399.545(b)-(e). Neither these requirements, nor the fact that the physician "shall be responsible for all medical services provided by a physician assistant under his or her

supervision," id. § 1399.545(f), amounts to the level of close supervision necessary to establish that Hager's opinion about Plaintiff's health is the same as that of a treating physician.

Accordingly, Plaintiff has offered no basis for her contention that Hager's opinion reflects that of a medically acceptable source. See Molina, 674 F.3d at 1111 (finding that physician assistant "did not qualify as a medically acceptable treating source" when "the record does not show that she worked under a physician's close supervision"); see also Lowery v. Astrue, No. 11-1479, 2012 WL 1968605, at *1-2 (C.D. Cal. June 1, 2012) (noting that physician assistant was not "acceptable medical source" and therefore ALJ did not need to give specific and legitimate reasons for rejecting physician assistant's opinion). Because this argument fails, so too does Plaintiff's argument that the ALJ was required to give specific and legitimate reasons for rejecting Hager's opinion. See Lowery, 2012 WL 1968605 at *2 ("ALJ need not give any deference to [physician assistant's] opinion nor provide 'specific and legitimate reasons' to reject it"). Thus, the ALJ needed only to give germane reasons for discounting his opinion. See id. That is precisely what the ALJ did. See AR 33.

Hager prepared the Spinal Impairment Questionnaire on September 5, 2012, or about two weeks before Plaintiff's second lumbar fusion surgery. AR 370-72. In determining that Plaintiff's condition had improved beyond that opined by Hager, the ALJ relied on the opinions of two physicians who treated Plaintiff after her second surgery. AR 32-33. The ALJ noted that in January 2013, Dr. Imad Rasool, a pain management specialist, did not observe any neurological abnormalities in Plaintiff's lower extremities following the surgery. AR 32 (citing AR 403-04). The ALJ also noted that Dr. Sean Xie, the neurosurgeon who performed both of Plaintiff's surgeries, noted that "based on his physician examination and [Plaintiff's] reports of improvement in her

condition, […] he did not recommend additional intervention to correct [Plaintiff's] spinal condition." AR 33 (citing AR 425-26). The ALJ further noted that Plaintiff's physical therapist "observed improvement in the functioning of her spine." Id. (citing AR 434-37). That Hager's assessment was contradicted by other, more recent evidence of record was a germane reason for discounting his opinion. See, e.g., Noe v. Apfel, 6 F. App'x 587, 588 (9th Cir. 2001) (holding that ALJ properly discounted assessment of "other source" where it was contradicted by evidence in the record).

Moreover, contrary to Plaintiff's contention, the ALJ did not outright "reject" Hager's assessment. See JS at 11. Rather, as discussed above, the ALJ gave it "very little probative weight" in part because, as a physician assistant, his opinion is "less persuasive" than that of a specialist physician. As the ALJ held, Hager's opinion was inconsistent with that of Dr. Rasool, who also specialized in the relevant field of pain management, and whose opinion was therefore entitled to greater weight. The ALJ thus properly discounted Hager's opinion to the extent it conflicted with that of Dr. Rasool. See Molina, 674 F.3d at 1112 (that physician assistant's opinion was inconsistent with that of specialist physician is germane reason for rejecting physician assistant's opinion). Accordingly, the ALJ did not err in giving little probative weight to Hager's opinion. Remand is not warranted on this basis.

### 2. The New Evidence Submitted to the Appeals Council

#### a. Relevant Law

Social Security regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970(b)). In Brewes, the Ninth Circuit held that, "when the

Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Id. at 1163 (citing Tackett v. Apfel, 180 F.3d 1094, 1097-98 (9th Cir. 1999)); see also Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651, 652 (9th Cir. 2014) ("Remand is necessary where the material evidence gives rise to a 'reasonable possibility' that the new evidence might change the outcome of the administrative hearing." (citing Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984))). The Ninth Circuit also held that a plaintiff is not required to demonstrate that the later admitted records meet the materiality standard of 42 U.S.C. § 405(g) since that standard applies only to new evidence that is not part of the administrative record and is presented in the first instance to the district court. Brewes, 682 F.3d at 1164. Instead, "evidence submitted to and considered by the Appeals Council is not new but rather part of the administrative record properly before the district court." Id.

> b.   Background

At her second hearing on April 11, 2013, Plaintiff indicated that her file was complete. AR 60. However, on April 29, 2013, Dr. Tuan H. Nguyen, a specialist in family medicine, completed a Spinal Impairment Questionnaire for Plaintiff. AR 473-79. Dr. Nguyen noted that Plaintiff was suffering from low back pain and assessed her prognosis as "poor." AR 473. Dr. Nguyen indicated that his examination of Plaintiff revealed limited range of motion and tenderness in the lumbar spine, paravertebral muscle spasms and sensory loss, a "somewhat unbalanced" gait, and a positive straight-leg raising test. AR 473-74. He also indicated that Plaintiff's primary symptoms included low back pain, lumbar paravertebral spasms, and easy muscle fatigue. AR 475.

Dr. Nguyen opined that Plaintiff's symptoms were "periodically" severe

enough to interfere with attention and concentration and that she was incapable of even low-stress work, AR 477-78; that Plaintiff could not sit for more than two hours and could not stand and walk for more than one hour in an eight-hour day, AR 476; that Plaintiff could frequently lift and carry less than five pounds and could occasionally lift and carry between five and ten pounds, AR 476-77; and that Plaintiff's impairments would produce good days and bad days, and she would likely miss more than three times a month as a result of her impairments and treatment. AR 478.

Because Dr. Nguyen's Spinal Impairment Questionnaire was submitted in the first instance to the Appeals Council on July 12, 2013, AR 232-34, it was not considered by the ALJ. The Appeals Council reviewed the questionnaire when denying Plaintiff's request for review, and concluded that the additional evidence[1] did not compel a reconsideration of the ALJ's decision:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the [ALJ]'s action, findings, or conclusion is contrary to the weight of evidence of record. …
>
> We found that this information does not provide a basis for changing the [ALJ]'s decision.

AR 1-2.

c.    Analysis

Plaintiff appears to contend that the Appeals Council erred in denying her request for review of the ALJ's decision. JS at 14 ("The Appeals Council

---

[1] The Appeals Council also considered a Psychiatric/Psychological Impairment Questionnaire prepared by Dr. Lydie Hazan, AR 482-89, which is discussed below in Section III.B.

had Dr. Nguyen's opinion prior to denying [Plaintiff's] request for review of the ALJ's decision. A reasonable person would find that [Plaintiff's] physical impairments did not improve as of January 1, 2013."). As discussed above, in considering evidence submitted for the first time to the Appeals Council, a district court must assess the record as a whole and determine whether the ALJ's decision is supported by substantial evidence. See Brewes, 682 F.3d at 1161-62. Accordingly, the Court will construe Plaintiff's argument as contending that the ALJ's final decision is not supported by substantial evidence when the Spinal Impairment Questionnaire prepared by Dr. Nguyen is considered along with the other evidence. The Commissioner counters that "[c]onsidering the record as a whole, the new evidence that Plaintiff submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision." JS at 23. The Court agrees.

Although the form check-box and fill-in-the-blank questionnaire prepared by Dr. Nguyen contained conclusions contradicting the medical evidence of record and Plaintiff's RFC assessment, Dr. Nguyen provided very few, if any, clinical findings or explanation to support his conclusions. See AR 473-79. Indeed, Dr. Nguyen left blank the section of the questionnaire that asked him to "[i]dentify the laboratory and diagnostic test results which demonstrate and/or which support your diagnosis." AR 475. Because Dr. Nguyen's opinion, as expressed in the questionnaire, is conclusory and minimally supported, remand for further consideration of his opinion is not warranted. See Thomas, 278 F.3d at 957; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings); see also De Guzman v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (holding that ALJ was "free to reject" treating physician's check-off report that did not contain any

explanation of basis of her conclusions).

In addition, the questionnaire appears to be based largely on Plaintiff's own subjective complaints of pain, which are inconsistent with other representations made by Plaintiff regarding her pain level. For example, in January 2013, Dr. Rasool noted that Plaintiff "endorses adequate support of her pain." AR 403. Also in January 2013, Dr. Xie noted that Plaintiff "still had some pain, superior to the area of her surgery," but "did not take any pain medication during the day." AR 425. In March 2013, Plaintiff reported to her physical therapist that her pain had improved with treatment. AR 434, 436-37. That same month, Dr. Rasool described Plaintiff's condition as "stable" and noted that she did not report any "significant interval change." AR 432. For these reasons, the Court concludes that Dr. Nguyen's opinion was inconsequential to the ultimate determination of medical improvement, because it is implausible that the ALJ would have given his opinion any significant weight when considered along with the other evidence in the record. See Batson, 359 F.3d at 1195 (holding that ALJ properly discounted treating physician's opinion because it was in form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of plaintiff's medical condition, and was based plaintiff's subjective descriptions of pain).

Accordingly, the Court finds that the ALJ's determination that Plaintiff was not disabled after December 2012 is supported by substantial evidence in the record despite the addition of Dr. Nguyen's opinion, and that there is not a reasonable possibility that Dr. Nguyen's opinion would have altered the outcome of the administrative hearing. See Borrelli, 570 F. App'x at 652. Thus, remand is not warranted on this ground.

///

///

11

### 3.    Substantial Evidence Supports the ALJ's Finding of Medical Improvement

#### a.    Relevant Law

Generally, a claimant for disability benefits bears the burden of producing evidence to demonstrate that he or she was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Once a claimant has been found to be disabled, however, a presumption of continuing disability arises in her favor." Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)). The burden then shifts to the Commissioner to produce "evidence sufficient to rebut this presumption of continuing disability." Id. Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that he or she becomes able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594; Murray, 722 F.2d at 500.

Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1); see also 20 C.F.R. § 404.1594(c)(1). A determination that medical improvement has occurred requires comparison of "the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7).

It appears that the Ninth Circuit has not directly addressed whether the

medical improvement standard applies to cases, such as here, involving closed periods of disability. See Bruna v. Astrue, No. 12-2147, 2013 WL 1402362, at *16 (N.D. Cal. Apr. 5, 2013) ("Although the Ninth Circuit has not yet addressed whether this standard also applies to cases involving closed periods of disability, the Circuits that have are largely in agreement that it does."). Indeed, several other circuits have held that the standard is appropriate for closed period cases. See, e.g., Waters v. Barnhart, 276 F.3d 716, 718-19 (5th Cir. 2002) (holding that "in closed period cases, the ALJ engages in the same decision-making process as in termination case" and therefore, the medical improvement standard applies); Shepherd v. Apfel, 184 F.3d 1196, 1200 (10th Cir. 1999); Jones v. Shalala, 10 F.3d 522, 524 (7th Cir. 1993); Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987). Given these cases, and the fact that the Commissioner adopts the medical improvement standard, see JS at 25 ("Such evidence substantially supports the ALJ's finding of medical improvement effective January 2013, which was sufficient to overcome a presumption of continuing disability."), the Court applies the medical improvement standard to the ALJ's determination that Plaintiff's disability ended on December 31, 2012.

    b.    Background

    At the April 11, 2013 hearing, the ALJ expressed that, based on her review of the record, she believed that "this case is appropriate for a closed period." AR 60. The ALJ ultimately determined that Plaintiff's disability ended on January 1, 2013, because, as of that date, "the record shows less severe anatomical abnormalities in the lumbar spinal area and improvement in [Plaintiff's] pain and physical functioning." AR 32. The ALJ also compared Plaintiff's RFC for the period during which she was disabled with her RFC beginning January 1, 2013, and concluded that Plaintiff's "functional capacity for basic work-related activities has increased." Id.

13

c.    Analysis

Plaintiff argues that the ALJ's finding of medical improvement following her second lumbar fusion surgery is not supported by substantial evidence in the record. JS at 12-14. Plaintiff first argues that, on January 8, 2013, Dr. Nguyen noted that Plaintiff "had limited bending of the lower back and positive back pain." JS at 13 (citing AR 427). However, as the Commissioner points out, the only limitation in Dr. Nguyen's treatment notes from January and February 2013 is "no heavy lifting." JS at 25 (citing AR 424, 427).

Plaintiff also argues that, on January 11, 2013, Dr. Xie indicated that Plaintiff's physical examination was overall unchanged and the examination was "somewhat limited due to her back pain." Id. (citing AR 425). However, taken as a whole, Dr. Xie's evaluation supports the ALJ's conclusion that Plaintiff's condition improved post-surgery. Indeed, Plaintiff acknowledges that "Dr. Xie did indicate that pain did improve and level of comfort increased." Id. As the ALJ noted, Dr. Xie opined that Plaintiff "did not require any pain medication during the day" and "her current pain regimen seemed to work quite well." AR 33, 425. The ALJ also relied on Dr. Xie's conclusion that he would not recommend additional intervention to correct Plaintiff's spinal condition. Id. Dr. Xie's evaluation was supported by his observations that Plaintiff's "incision had healed very well," "her strength of feet was normal," and an x-ray of her lumbar spine revealed good alignment of her hardware fusion. AR 425.

Plaintiff next argues that Dr. Rasool indicated that Plaintiff had a positive straight-leg raising test in February 2013. JS at 13-14 (citing AR 401). However, as the ALJ stated, Plaintiff told Dr. Rasool in January 2013 that she experienced "adequate support" of her pain. AR 32, 403. Plaintiff did not report any significant changes to Dr. Rasool thereafter, and in March 2013, he described her condition as "stable." AR 32-33, 401, 403, 432.

14

Thus, when viewed in its proper context, the evidence cited by Plaintiff actually supports the ALJ's determination that her medical condition improved as of January 2013. The addition of Dr. Nguyen's Spinal Impairment Questionnaire to the record does not, as Plaintiff contends, undermine this substantial evidence of medical improvement for the reasons discussed above in Section III.A.2. Accordingly, the Commissioner has met her burden as to the period beginning January 1, 2013 by demonstrating that due to medical improvement, Plaintiff's RFC was greater than it had been before her second lumbar fusion surgery. Remand is therefore not warranted on this ground.

**B.** **The Appeals Council Did Not Err in Denying Plaintiff's Request for Review**

Plaintiff also contends that the Appeals Council erred in denying her request for review, which was accompanied by a Psychiatric/Psychological Questionnaire prepared by Dr. Lydie Hazan, AR 482-89. As set forth above, when the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence based on the record as a whole. Brewes, 682 F.3d at 1161-62. Remand is necessary where there is a reasonable possibility that the new evidence might change the outcome of the administrative hearing. Borrelli, 570 F. App'x at 652. The Commissioner argues that "the new evidence that Plaintiff submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision." JS at 32.

**1.** **Background**

Plaintiff testified at the April 11, 2013 hearing that she sees Dr. Lydie Hazan for mental health treatment. AR 69. She also testified that Dr. Hazan prescribes her Lithium and Lurasidone. Id. Plaintiff stated that she suffers from depression and "anything can really set you off." AR 70. She also stated that

she experiences anxiety attacks "[a]lmost nightly," and was diagnosed "back when [she] was 14 . . . with bipolar I." AR 70-71. Plaintiff further testified that she had been psychiatrically hospitalized four times, with the last time occurring in 2009. AR 71.

In determining that the objective medical evidence was insufficient to support the existence of any significantly limiting mental impairment, the ALJ considered a letter from Dr. Hazan stating that she had been treating Plaintiff for "bipolar disorder" since January 24, 2013. AR 27, 438. The letter indicated that Plaintiff had participated in a study related to bipolar disorder and included a summary of the dosages of medication Plaintiff was prescribed during the study. AR 438-39. The ALJ found that Plaintiff's bipolar disorder has not caused more than minimal limitation in her ability to perform basic work-related activities for the following reasons:

> … Dr. Hazan did not state with specificity the evidence that she relied upon to support her diagnosis. Further, she did not indicate the extent to which, if any, the medications she prescribed were helpful in controlling the claimant's condition. Indeed, the record contains little objective evidence to support the claimant's allegations of disabling anxious, depressive, and manic symptoms. The record does not contain an objective assessment of the claimant's mental condition (e.g., mental status examination, psychological test) performed by a mental health specialist. Without such evidence, the undersigned cannot determine the extent to which, if any, the claimant's alleged psychiatric symptoms affect her cognitive, expressive, receptive, and/or social functioning. Although the claimant testified that she has been hospitalized four times due to her psychiatric symptoms (Hearing Record), the record does not contain evidence of this treatment.

16

AR 27.

On December 2, 2013, several months after the ALJ's decision, Dr. Hazan completed a Psychiatric/Psychological Questionnaire for Plaintiff. AR 482-489. In the questionnaire, Dr. Hazan diagnosed Plaintiff with Bipolar I Disorder and indicated that Plaintiff's prognosis "can be long term and at times be severe." AR 482. Dr. Hazan checked the boxes indicating that Plaintiff suffered from appetite, sleep, and mood disturbance, emotional liability, manic syndrome, generalized persistent anxiety, and hostility and irritability. AR 483. Dr. Hazan also indicated that her diagnosis was supported by "SIGMA," the "C-SSRS & YMRS rating scales," and the "AIMS rating scale." AR 483. She noted that Plaintiff's primary symptoms were irritability, excessive talking, depression, sadness, reduced appetite, and concentration difficulties. AR 484. She indicated that Plaintiff has been prescribed Lithium, Doxycycline, Motrin, and Phenazopyridine. AR 487.

Dr. Hazan opined that Plaintiff's impairments would last at least twelve months and that she was incapable of even "low stress" work. AR 488. Dr. Hazan also opined that Plaintiff's impairments would produce good days and bad days, and she would likely miss more than three times a month as a result of her impairments and treatment. AR 488-89. Dr. Hazan further opined that the earliest date Plaintiff's symptoms and limitations appeared was "since diagnosed – years – ." AR 489. Dr. Hazan signed the questionnaire and indicated that her specialty was "general practice." AR 365.

Dr. Hazan's Psychiatric/Psychological Questionnaire was submitted in the first instance to the Appeals Council on July 3, 2014, AR 480-81. As discussed above, the Appeals Council reviewed the additional evidence submitted by Plaintiff and concluded that it "does not provide a basis for changing the [ALJ]'s decision." AR 1-2, 5.

///

17

### 2.    Analysis

Plaintiff contends that when she submitted Dr. Hazan's Psychiatric/Psychological Questionnaire to the Appeals Council, it filled "the psychological void in the ALJ's assessed residual functional capacity assessment." JS at 32. The Court disagrees. As an initial matter, the questionnaire is a standardized, check-all-that-apply and fill-in-the-blank report in which Dr. Hazan provided minimal, if any, supporting reasoning or clinical findings. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); see also Murray, 722 F.2d at 501 (expressing preference for individualized medical opinions over check-off reports).

Additionally, the ALJ's reasons for discounting Dr. Hazan's letter apply equally to the questionnaire. As the ALJ observed about the letter, the questionnaire similarly "did not state with specificity the evidence that [Dr. Hazan] relied upon to support her diagnosis." See AR 27. Plaintiff argues that "Dr. Hazan utilized SIGMA; C-SSRS QYMRS rating scale; and AIMS rating scale testing to support her diagnosis." JS at 19-30 (citing AR 483). However, as the Commissioner points out, "there is no evidence that Dr. Hazan actually administered any tests and she provided no specific relevant findings." JS at 35 (citing AR 483).

The record contains no explanation as to what "SIGMA" is, and the Court's attempts at researching this acronym have not been fruitful. "C-SSRS" appears to refer to the Columbia-Suicide Severity Rating Scale, "an assessment tool that evaluates suicidal ideation and behavior."[2] Although there are eight

---

[2] Available at http://www.cssrs.columbia.edu/documents/ScoringandDataAnalysisGuide_

versions of the C-SSRS,[3] Dr. Hazan does not state which version was used and does not provide any results, such as whether there was improvement in suicidal ideation. "YMRS" appears to refer to the Young Mania Rating Scale, which measures the severity of manic symptoms of bipolar disorder and the change over time.[4] Dr. Hazan does not provide any results such as the severity ratings for Plaintiff's symptoms or how the severity ratings have changed over time. "AIMS" appears to refer to the Abnormal Involuntary Movement Scale, which measures abnormal movements of parts of the body, such as those associated with the use of certain psychiatric medications.[5] Dr. Hazan has not provided any AIMS scores.

In fact, in the section of the questionnaire that asked her to "[l]ist medication(s) prescribed … and any side effects your patient has reported," Dr. Hazan listed four medications, but did not include any side effects. AR 487. Of these medications, only Lithium appears to have been prescribed to treat Plaintiff's mental impairments.[6] While Plaintiff testified at the hearing that she was prescribed both Lithium and Lurasidone by Dr. Hazan, see AR 69, neither the questionnaire nor the letter mention Lurasidone. Further, just as the ALJ remarked about Dr. Hazan's letter, the questionnaire similarly does "not

---

Feb2013.pdf (last accessed February 4, 2016).

[3] Available at http://www.cssrs.columbia.edu/history_cssrs.html (last accessed February 4, 2016).

[4] 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:10.

[5] 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:12.

[6] The other medications listed are an antibiotic, an anti-inflammatory, and a medication used to relieve pain and discomfort in the urinary tract.

indicate the extent to which, if any, the medications she prescribed were helpful in controlling the claimant's condition." See AR 27.

Finally, in the section of the questionnaire that asks "the earliest date that the description of symptoms and limitations in this questionnaire applies," Dr. Hazan wrote, "since diagnosed – years – ." AR 489. Plaintiff testified that she was diagnosed with bipolar disorder at age fourteen and that she had been psychiatrically hospitalized four times, including in 2009. AR 70-71. As the ALJ noted, the record does not contain any evidence of these hospitalizations or any other psychiatric treatment prior to that provided by Dr. Hazan. See AR 27. Based on this "evidence (or lack thereof)," the ALJ properly concluded that Plaintiff's "bipolar disorder has not caused more than minimal limitation in her ability to perform basic work-related activities." Id.

The ALJ's conclusions are supported by substantial evidence in the record and are appropriate reasons for discounting Dr. Hazan's opinion. Thus, contrary to Plaintiff's contention, Dr. Hazan's questionnaire did not fill the psychological void in the ALJ's assessed RFC. See JS at 32. Even with the addition of the questionnaire, Plaintiff has failed to meet her burden to demonstrate that she suffered from a severe mental impairment. The Court therefore finds that there is not a reasonable possibility that Dr. Hazan's opinion would have altered the outcome of the administrative hearing. See Borrelli, 570 F. App'x at 652. Remand is not warranted on this basis.

///
///
///
///
///
///
///

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  February 16, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge